All right, Mr. Maldonado, Mr. York, we call our second case number 2050399, Cambranis v. Pompeo et al. Mr. Maldonado, you're up, sir. Good afternoon, and may it please the court, my name is Javier Maldonado, and I represent the plaintiff appellant, Jonathan Cambranis, David Jonathan Cambranis. Mr. Cambranis seeks to prove that he is a United States citizen. He has sued the Secretary of State under the U.S. Constitution to establish that he was born in the United States. He also seeks reconsideration of the court's decision in Gonzalo vs. Guzman that he cannot sue under USC 1503A because of the statute of limitation. The court dismissed both of his claims. Broadly speaking, this appeal presents two issues, the scope of 704 and whether it limits the waiver of sovereign immunity in the APA, or it is otherwise a limitation on a non-APA cause of when a privilege or right is denied based on the sufficiency of the evidence presented, and not on the ground that he is not a national of the United States. In the time that I have, I wish to discuss three issues. First, the text and structure of the APA, and particularly, plaintiff appellant's view of the relationship between 702 and 704. Second, the case law interpreting the waiver of sovereign immunity in 702 and its relationship to 704. And lastly, if time permits, I would like to discuss why Mr. Cambranis still have to claim under 1503. Mr. Maldonado, before you begin, which of those arguments did you present to the district court? The APA claims 702 and 704, because of Gonzalez versus Limon, we represented to the court that the court had already ruled that we could not bring the 1503 claim, and that we would preserve it for appeal. It was noted in the district court's decision. Right, but I guess my point is if you argued in district court that he was bringing a 1503 claim, and it's foreclosed by Gonzalez, but you want to take Gonzalez to the full court, how can you shift your argument now and say that 1503 applies differently when it's a proof insufficiency as opposed to a citizenship determination? Yes, your honor. The court's decision has broadly been interpreted by most of the district courts that have been addressing the citizenship issue. I saw it as a way of simply including it in my complaint, and the court acknowledged that I was barred by Gonzalez versus Limon, and I believe my client has the right to continue to urge the court to reconsider 1503. I think maybe I didn't speak clearly. For you to predicate error on the district court's ruling, aren't you committed to the position that, in fact, Gonzalez controls and our court should revisit Gonzalez? Yes. In other words, I don't think you ever told the district court that he's just challenging proof insufficiency and that that can't come within Gonzalez. I think, again, your honor, I think that because of Gonzalez versus Limon, I was precluded from bringing those claims. That's how I read it, therefore were precluded likewise. Is that correct? I don't believe so, your honor. I think that Gonzalez versus Limon is overbroad, and this court can reconsider it on appeal at this point. But Mr. Cambranes has brought a separate claim as well, a constitutional- How can the panel do that? Your honor? How can the panel do- Reconsider a case decided that's on our books? I mean, we don't have authority as a panel. You don't, your honor, but I preserve it for purposes of taking it en banc. I understand that this panel cannot overrule Gonzalez versus Limon, and so I have preserved it for purposes of appeal and to present it to the en banc. But Mr. Cambranes has presented a constitutional claim, one which is preserved and the claim is subject to review because there's a waiver of sovereign immunity under 702. The district court improperly believed that 704 somehow limited the waiver of sovereign immunity in 702. That's not possible. The drafters in 1976, when they added the sovereign immunity to 702 and had no intent that any other parts of the statute would apply to the waiver of sovereign immunity. Congress could not have included a sovereign immunity provision, a waiver in 702, only to believe that it would be limited by 704. There's a separate issue of whether 704 acts as a limitation on a non-APA claim. This was an issue that Judge Higginson erased in the decision of Bell in a footnote, and it was also addressed in the Alabama Cushota tribe. The question is, is whether claims where review is not sought under the APA must separately satisfy 704 finality decision requirement and adequacy of a remedy? Every circuit court that has addressed this issue has concluded that 704 has no application to non-APA claims. But we haven't yet said that, right? You have not, Your Honor. And that is the reason why many courts have said there's sort of confusion about the law. You have plenty of time, unlike the case we just heard where it was split up. So I'm just going to get you back, I hope, to sort of some factual concerns that I have. There's nothing that I see, the government may disagree, that prevents you from going back to the Department of State a seventh time with a voter ID or with whatever real ID your client has and having them assess whether now that's sufficient. At that point, you could go to district court if they arbitrarily said, nope, that's still not enough. You could go to district court and make the argument that 1503 doesn't apply to that situation. Do you agree? I think that it's possible that we could do that. My client has tried six times. Each time, the Department of State has said no, Your Honor. But has he, I'm curious, and maybe the record doesn't reflect it, but am I correct that Texas recognizes this as a certified birth certificate, correct? It does, Your Honor. And does he have a voter ID? Does he have real ID? I was looking at the letters you gave them. Did you give them all that in the Texas Administrative Court proceedings? I did not represent him in the Texas Health and Human Services Administrative Procedures, Your Honor. I think what I see in the record is what was previously submitted to the State was the fact that Texas had removed the addendum or the red flag on the birth certificate. That still wasn't enough. At this point, Mr. Cambranes is left with bringing his constitutional claim, and there is no obstacle to bringing that claim to the district court. Well, we got close to saying there was in the Hinojosa case, so you're probably going to talk about that. Right, Your Honor. But in Hinojosa, the plaintiffs were trying to bring an APA claim. And so there, because it was reviewed under the APA, 704 necessarily applied to the plaintiff's and because there was an adequate remedy in 1503, there could not be an APA claim. The constitutional claim is not an APA claim. It is separated and apart from 701 through 706. The only thing that the plaintiff is relying on in the APA is the waiver of sovereign immunity in the second sentence of 702. Even the Supreme Court has said 701 through 706, the APA, it provides a cause of action. And therefore, it is a different cause of action than any other claims that could be brought against an officer of the United States or an agency by using the APA. The other point that I was making is that the government acknowledges as much in their brief. They don't rely on the district court's reasoning for dismissal. They rely on the fact and argue that this case was properly dismissed because of the third sentence in 702. And this is where the issue of 1503A comes in, Judge Higginson. 1503A, 702, the last sentence authorizes a district court to dismiss a claim where another statute grants consent expressly or that grants consent to suit expressly or impliedly forbids the relief sought. The government has been arguing, argued that at the district court, and that is what they're arguing before this court. But in order for that provision to apply, the statute must expressly forbid the relief. And nothing in 1503A expressly forbids it. I refer the court to, for example- But counsel, doesn't the statute of limitation contained in 1503A forbid the relief? In other words, you can't bring an appeal or petition for judicial review outside the five-year period provided by that statute. That is the government's position, Your Honor. However, it is an- Isn't that what the statute seemed to say when read together? I don't believe so, Your Honor. When the language, the terms of the statute are expressly or impliedly forbidden, compare that to, for example, the Potawatomi case at the Supreme Court, where the government was pointing at the QTAM Act and saying, look, there's an express provision there that says that no suit can be brought concerning Indian lands. There is nothing in Let me point out something differently about that provision and how it was interpreted when the amendments to the APA were being done. And let me just say the Potawatomi case makes it clear only statutes where the grievance is similar to that in another statute can serve to displace the sovereign immunity. So, for example, the government pointed to the quiet title, not the QTAM, the Quiet Title Act. And the plaintiff there was suing saying, the way that the Indian land is going to be used is going to affect my land or is going to affect me. And the Supreme Court says, well, that provision doesn't apply there. The last sentence of 702. And the reason it doesn't apply there is because the nature of the grievance by the plaintiff is markedly different than what that limitation provides. In the Quiet Title Act, it was about the government's possessory rights with respect to Indian lands and lands in general. What the plaintiff was complaining about was the effects of the use of the land on him. That's the same situation here. Let me tell you why. The 14th Amendment speaks to any person being born in the United States is a citizen. 1503 speaks to nationals. All citizens are nationals, but not all nationals or citizens. What Mr. Combrandus is seeking is something far more limiting and at the same time broader than what 1503A provides. He wants a suit on where he was born. That's not necessarily what 1503A requires. I know, but I guess this loops back to my early discomfort because you told the district court that he did have a 1503 claim. So you were telling them that there was an adequate remedy. It's just that Gonzalez was decided wrongly. That's true. I believe there is an adequate remedy, Your Honor, but Gonzalez v. Limon prevents these suits from being filed. There are a legion of cases in South Texas where we have been dismissed again and again based on Gonzalez v. Limon. But so therefore, for you to prevail here, we would have to say 704's adequate remedy provision does not apply to constitutional claims. That's right, Your Honor. It would be somewhat odd for this court to hold that in 1976, Congress envisioned 704 to act as a gatekeeper for constitutional claims. 704 is a limitation on the APA cause of action. Counsel, isn't that what happened? I'm sorry to interrupt you, but isn't that what happened in the Taylor case? I guess it's 1991. There was a Fifth Amendment claim asserted there, and yet the court found that all the claims that there wasn't any jurisdiction. Your Honor, I can see that Taylor is problematic, but let me just say that the problem is that the court didn't analyze it with the language that we know. We know that the APA is not a jurisdictional statute, and therefore it could not analyze the 704 issue as a jurisdictional matter. If something is going to be dismissed on the basis of 704, it's because the plaintiff didn't state a cause of action. But this is a second category of earliest authority from our court that you're disagreeing with, right? Taylor precedes the cases that you're relying on to say it can't be jurisdictional. So right or wrong, it's binding on us, yes or no? Your Honor, it is binding on the court so long as the court doesn't believe that the Supreme Court case is holding that the APA is not jurisdictional, it wouldn't apply to this court. And if the court accepts that, then the conclusion that the Fifth Circuit made there, that it was a jurisdictional issue, would not be correct. I'm sorry I ran out of time. I'm sorry, Mr. Maldonado. We appreciate your reserved five minutes of rebuttal time. We'll shift now and hear from Mr. York. Good afternoon, Your Honor. Can everyone hear me all right? Is the audio working? Yeah, we can hear you. You have a little bit of an echo, but go ahead. Thank you, Your Honor. May it please the court, my name is Benton York, and I represent the Secretary of State, the Apley, in this matter. This court should affirm the district court's dismissal because plaintiff's only available cause of action is time warped. Plaintiff challenges the denial of his passport application and seeks a declaration that he's a national of the United States. And Congress provided an avenue in Article III courts for precisely that relief, and that's USC 1503A. But as this court made clear in Gonzales v. Lamont, a 1503 claim must be brought within five years of the first denial, and plaintiff didn't do that here. And his complaint was ultimately properly dismissed for three reasons. First, his 1503 claim's time barred, as plaintiff conceded at the district court, and as Gonzales, and then more recently Martinez, the Fifth Circuit has made clear that that's how the statute of limitations operates in 1503. And then second, he has no APA claim because 1503 provides an adequate alternative remedy, and again, that is subject to controlling precedent in Flores and Hinojosa, and plaintiff also conceded the point in the district court. And so third is really the issue that I think we're dealing with here, is that Section 702 does not preserve plaintiff's constitutional claims because 704 also applies to those claims. And Judge Higginson, you were asking about the Taylor case earlier, the Texas County's case, and I believe it's correct that although that didn't arise in the context of Section 1503A, that there's no reason that 1503A would be any different than the statute there. Plaintiff's argument essentially would require the court to say that 702 creates a cause of action for constitutional claims that is independent of the limiting provisions of 704. And there's nothing in the text that would make that distinction. No court has made that distinction. What authority do you point to, especially with Rusk as a Supreme Court decision, what authority do you point to that Congress meant 1503A to be the exclusive remedy for circumstances like Mr. Cabranes? Well, I don't know that it's necessarily the exclusive remedy. I think that even within the act, it notes that people can, it notes removal proceedings and that individuals can present their claim that they are, in fact, a U.S. citizen during their removal proceedings. So that's another area where that could be presented. As far as a cause of action, in this instance, because 1503A is an adequate alternative remedy, he can't bring an APA statutory claim in that instance. And the... He's saying he's a birthright citizen. And so he's focusing more on the constitutional claim. I think that's the claim he's brought here. And he could have brought that with his 1503A claim. The problem is that, you know, he submitted his application and then didn't file anything in court for nine years after the application was denied. And at that point, he was not able to raise the... Move away from the wall. Let me just ask practically. Let's imagine you're a student and you just don't fill out all the boxes. You just submit a lousy application. And so they deny it. And then there's a pandemic. So you don't want to travel anyway for a bunch of years. And you hit your fifth year and all of a sudden you want to travel somewhere and you submit all sorts of proof that fully compliant. But the Department of State says, no, you're can't get into an Article III court to say that's arbitrary and capricious. You're time barred forever. You're saying on this... Like you're probably aware some district courts, especially in New York, have said that when you look at 1503, the time bar applies when the Department of State says no passport, you're not a citizen. That isn't what happened that I read in these letters. Here they said, you didn't give us enough information. That must happen to thousands of Americans all the time. I just went with my daughter to get a passport. There's a lot of stuff you got to give them. If you don't get it all just right, you're going to have to reapply. But people get lazy. They don't apply. It's the government's position that if you get denied once, five years pass before you think I want a passport again. If the government then says no, the original under Gonzalez, the original denial means you can never correct it. I think what's happening is district courts are saying 1503 applies when the Department of State says you're not a citizen. But as I read this case, you never said that to him. You just said you didn't give us enough. He kept trying and maybe he'll try again. Well, Your Honor, I think that that is... I think it's correct to say that under that understanding of the statute of limitations, that's the controlling law. I think if the question is about whether or not an express finding that says you are not a U.S. citizen is what starts the clock on the statute of limitations, that certainly is not required under the language of the statute. It doesn't use that terminology. You're the authorized representative of the new Secretary of State. Is it the Department of State's position, the United States government's position, that if he resubmits and has better proof, like all this stuff Texas apparently gives him, he's got a real ID, maybe he's voting as an American citizen, is it still the government's position that if that were denied, he would not be able to jump into federal court because he let too many years go by? And if so, is that your position and do you have authority for that? So, I don't have authority to answer that specific question about whether a later application brought down the road based on different information. I don't have that answer right now, but it's also not the case that's in front of the court. I guess I thought it was. In Gonzalez, it was also an insufficiency of proof case. And as I read, it's not in the briefs, but as I read other courts, other courts are saying, surely that's not a 1503 claim. That's not what was meant by the time bar for 1503. Well, I think there's a difference between a, so I know that in the process that sometimes there's a request for additional information. And that's different than a final denial. And so, I think that what starts the clock is that administratively final denial letter. And I think, I guess I just also point to 1503, or I'm sorry, in I believe it was Flores, I'm sorry, in Hinojosa and in Martinez, you know, the denials in those cases involved similar language about that the applicant had not established that they were a U.S. citizen. And that issue did not come up, or certainly was not an impediment to the rulings that the court reached in those cases. I think it's also important to note that, just on a practical level, that what happens when, and there's a regulation that requires this, and I can give the citation, well, I thought I had it right here, but essentially that when an applicant comes with a birth certificate that has been issued longer than one year after the application, or after the date of birth, that additional proof is automatically required to establish entitlement to the... And that makes sense. And here, and of course, we know here there was a Mexican birth certificate before. I fully understand that authorities need to look into that. I'm not glossing over that at all, but I'm sort of thinking factually, comedy, Texas did look into it. And it seems like, unless you dispute it, his representations in his brief, the record reflects that Texas heard from the doctor and confirmed it, gave him a certified copy. So I don't think that that evidence is in the record, though, about what specific evidence he provided with his passport application. And so I think that because that's not in the record, that this is a different case. But even if all that's submitted is the new Texas birth certificate without the attachment with the Mexican birth certificate, he's still subject to that requirement that you've got to delayed U.S. birth certificate. Well, we still have a lot of time. I just, I sort of think to myself, this is a really complicated legal picture, three statutes, very difficult, this circuit precedent. But I don't quite see it here. You saying, if he's got a real ID and he's voting, give us that and he'll get his passport. I mean, in other words, and if we happen to deny it, you're going to get it, you're going to get court review. But maybe you are saying he wouldn't. I'm not exactly sure what I'm hearing you say. Seems like this could be a big mountain out of a little molehill if he actually is a U.S. citizen voting and driving and he should just submit it again and do a little better. But I think that the I think first and foremost, he's not prejudiced from submitting additional applications for the passport. He can I don't think there's really any limit at all to how many times he can submit an application. So if he does have additional evidence that he can present, then that is certainly an avenue that's available to him from an administrative standpoint. And whether or not there would be jurisdiction or whether or not an Article III court could review a denial in that instance where, you know, it's clear that it's a fundamentally different application. I think that's a different case than what's before the court today. Yeah. And do you and do you understand that he is urging that he has new evidence or real idea or any of the rest of it or is saying he's at the door with the same thing he had and he still can't get in for the same reasons were given to him before? And you're arguing the five years has passed. Is that what you're arguing? In other words, I mean, Judge Higginson's questions are probing and he's asking it in a way as if, you know, he couldn't come back with a real ID with more evidence and so forth. But as the case is presented to us, do you understand that he has attempted with different evidence to get through the door and has been thwarted in the five years or he's arguing now that the court below was incorrect to not have let him in with what he had? So I think that whatever evidence was presented to the passport office, I we don't have that in the record. We know that he submitted additional applications, but specifically what that evidence was is not part of the record on appeal. And then I guess the question as to I'm sorry, your honor, could you could you repeat your second question? Well, I mean, I'm trying to wind it sort of back between from Judge Higginson's questions to you of, you know, his ability or not to come back in with a real ID, more evidence, different. He was pausing it that wasn't in a sufficiency insufficiency rather approach on his part. And he couldn't prevail based on that. And then the government says, sorry, it's too early to be asking you whether or not you were taking up. You, the government were taking a position that he's forever barred forevermore, no matter whatever else happens. And I understood you to say you weren't prepared to answer that kind of question. Is that did I hear you right or not? Well, I think that the answer to that is if it's based on substantially the same evidence then I think it's certainly barred. At that point, and that, you know, only in a different way, what do you take the view that the five years bars? So the five years bars filing a claim in Article three court after obtaining a final administrative denial of the passport application. And, and at that point it's, it's too late to review. And I think that's really what the court setting in Gonzalez that, that the issue there was really about, about finality and that even essentially that there would be no purpose for the statute of limitations to exist. If every single time someone filed a new application, it just restarted the clock. And that, you know, that certainly would that the reason the court ruled the way it did in Gonzalez was to give effect to congressional intent as far as the statute of limitation goes. It would, but that is why the first denial is when the statute starts to run. Are you prepared to discuss whether we're, our court's position in Taylor is a lonely one? In other words, are you taking the position that 704 independently restricts jurisdiction independent of whatever effects it has on 702? Is that fifth circuit law and are you defending it? Yes, your honor. I think that that's, that's correct. So 704 for any claim to be brought pursuant to the APA, it's got to meet the criteria of 74 of 704, you know, here we're talking about the, whether sovereign immunity is waived or not. That's, that's a whole separate issue. And obviously the, you know, our position is briefed on that, but I think it ultimately, it doesn't matter because either way, 704 covers the claims here and in Taylor it's, it's very clear what, what claims were made that they, there was a due process claim as well as statutory claims under the, the relevant statute there. And, and the whole case was dismissed. You know, I think that if you look at the SACID decision by the Supreme court, that was one where the court found that there was a jurisdiction for an APA claim, but when it did the analysis, there was no separate analysis for the due process claims that they brought in that one. So, and ultimately, if, if that theory of 702 were able to go forward, that it would essentially render 704's limitations meaningless because all anyone would ever need to do is to cloak their claims in sort of constitutional language to avoid the limitations from 704. And, and I think it's also clear that this entire argument rests on the waiver of sovereign immunity that's contained in 702, which the government does not dispute that sovereign immunity is waived under 702. Our statutory bar in 1503A, I see I'm about to run out of time, but ultimately it's a very, it's simply taking the court's analysis in, in Taylor and applying it in 1503 setting. And ultimately that will decide the case. Counsel, just one final question. In Flores, which is a 2019 case, it appears to me that that panel reads 702 in conjunction with 704. Number one, are we bound by that? But number two, isn't that the right way to read those two statutory provisions? So, yes, your honor, I think it's certainly bound. The panel is definitely Flores. And I think that when they are read together, that, that, that does, the court's analysis in Flores was, was correct. And that 704 does inform 702 analysis. But again, that's not, that analysis is not even required because independently of all that, because there was an adequate alternative remedy under 1503A, that was where plaintiff should have brought his claims, including the constitutional claims. And there's no meaningful reason why that would not also apply to constitutional claims arising under 702. So we would ask that the court affirm the judgment below. All right. Thank you, Mr. York. Any other questions from the panel? All right. Thank you, Mr. York. We are back to Mr. Maldonado. You have rebuttal. Yes, your honor. No one who would apply, who applies for a passport and it gets denied because they forgot to include their pictures or whatever they forgot to, to check off a box and they got a denial letter. Nobody, no rational person would understand that if they did nothing about it, they would forever lose their right to challenge the right to establish their citizenship. This is a phenomena that is very common in South Texas. And in each of these cases, the government and not opposing counsel, but the state department is playing a bit of a game with individuals' lives. Take a look at these courts decision in Martinez versus Pompeo from last year. The state department argued, although opposing counsel was unwilling to admit right now, they argued that Gonzalez versus Limon means what it says. That it doesn't matter that there was no final decision on the ground that the person is not a national and that the decision was based on insufficiency of the evidence. It doesn't matter. You're forever barred. But Mr. Cambranes' constitutional claim is not barred. It has an explicit basis in the constitution. It says right there on the 14th amendment, section one, clause one, all persons born in the United States are citizens. He has a right to go to an article three court and demand a hearing on his claim. And there's no language in 704 or 702 that bars his constitutional claim. And there's nothing in the legislative history that says that for individuals that bring constitutional claims with an explicit basis in the constitution, that they must clear the portal of 704. A ruling against Mr. Cambranes on his constitutional claims forever closes the door on him bringing a citizenship claim. Opposing counsel has suggested we may be able to file another passport application and perhaps we will get into federal court. I will recommend to my client that we do that, but I suspect that two or three years from now, we will be back here again because it is the state department's position that Gonzalez versus Limon bars all such claims after the statute of limitations, regardless of the basis of the denial. This court has not expressly addressed the relationship between 702 and 704. They'll hold in that didn't really deal with a constitutional claim. Taylor Callahan, I admit that it did admit with it. It dealt with both an APA and non APA claim. But wouldn't the difference be you would be making these arguments in the first instance to the district court instead of saying Gonzalez controls, we need to preserve this and go to the court. You would be making both the arguments that you're making to the district court. Your Honor, I included in my complaint. We understand that it was that this court's president binds the district court. I guess if the court is saying we should engage in what I would say is a futile exercise, we'll gladly do that. But again, I don't know. I don't know that it's futile. I just don't think I didn't mean my questions to be hypothetical. My questions are directly your client situation. But I don't think the district court had that in front of it. In other words, my questions would allow you to say yes, Gonzalez controls if they had determined him not to be a citizen. But they never did that. 1503 is inapplicable altogether. But you never said that. And that's what I think is working in other courts. I disagree, Your Honor. It is not working in other courts. I work with other advocates who are litigating these cases. There's about three or four of us in South Texas who know these cases. And we talk regularly about working other courts. I mean, in the district court of the District of Columbia and in the New York Federal District Courts, I'm not saying in the Fifth Circuit. I understand, Your Honor. I apologize. But regardless, putting aside the 1503A claim, Mr. Cambranes has a constitutional claim. Nothing in 706 limits that cause of action. Nothing in 704. 704 is meant to limit the APA right to judicial review of agency positions. We ask this court to reverse the district court on that basis. All right. All right. Thank you, Mr. Maldonado and Mr. York. We appreciate your responsiveness to the court's questions and your briefing. The case will be submitted. You may be excused. Thank you. Thank you, Your Honor. Thank you, Your Honor.